Richard P. FRASCONA, Plaintiff,

v.

The MINNESOTA MUTUAL LIFE IN-
SURANCE COMPANY, a Minne-
sota Corporation, Defendant.

No. Civ.A. 197–CV595–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 1, 1998.

Kevin L. Ward, Donald W. Osborne, Schulten Ward & Turner, Atlanta, GA, for Richard P. Frascona, plaintiff.

Tommy T. Holland, Mary K. Pickard, Carter & Ansley, Atlanta, GA, for Minnesota Mutual Life Insurance Company, defendant.

## ORDER

THRASH, District Judge.

■ This is an action seeking to recover benefits under a disability policy issued by the Defendant. It is before the Court on the Defendant's Motion for Reconsideration [Doc. 34] of the Order [Doc. 33] denying the Defendant's Motion for Summary Judgment [Doc. 18]. A motion for reconsideration should be granted if it is necessary to correct a clear error or to prevent manifest injustice. In this case, the Court is persuaded that the Motion for Reconsideration should be granted to correct a clear error. The Order denying the Defendant's Motion for Summary Judgment is hereby VACATED and the Defendant's Motion for Summary Judgment is GRANTED for the following reasons.

In 1991, Plaintiff obtained a disability insurance policy from Defendant Minnesota Mutual Life Insurance Company. At the time, he was the president and sole shareholder of a printing contracts brokerage firm. He also raced automobiles. In February, 1994, Plaintiff was involved in a racing accident in which he allegedly struck his head. He was x-rayed for broken ribs, but did not seek or receive any medical treatment for a head injury. By March or April, 1994, Plaintiff began displaying bizarre behavior. He thought that he was receiving messages from God that his wife and friends were agents of Satan and were conspiring against him. During this period, he physically attacked his wife. He created a religious shrine in a bedroom dresser drawer.

In June, 1994, Plaintiff called his insurance agent, Charles Gray, and instructed him to cancel the Minnesota Mutual disability policy. In his deposition, Plaintiff testified that he wanted to cancel the policy because it was very expensive and he had quit racing. In an Affidavit filed in response to the Motion for Summary Judgment, Plaintiff testified that "I did not know what I was doing when I told him to cancel my disability, I just believed that he was trying to rob me and I told him angrily that it was too expensive and to cancel it." Gray thought that it was a mistake to cancel the disability policy. He disregarded Plaintiff's instructions to cancel the policy. Instead, he instructed Minnesota Mutual to change the billing procedure from a monthly automatic draft upon Plaintiff's bank account to quarterly invoices. Gray thought that this might give him time to change the Plaintiff's mind about canceling the policy. The first payment was due on June 13, 1994. No payment was made. On July 27, 1994, Minnesota Mutual sent to plaintiff a notice that the policy had lapsed along with an offer to reinstate the policy. Plaintiff did not respond to the reinstatement offer.

In November, 1994, Plaintiff was hospitalized due to his behavior problems. One of his physicians subsequently diagnosed him as having irreversible brain damage due to the February, 1994, racing accident. In December, 1994, Plaintiff's attorneys notified Minnesota Mutual of Plaintiff's intent to make a claim under the disability policy. After investigating the claim, Minnesota Mutual denied the claim on the grounds that Plaintiff was not under the regular care of a physician for a disability between the onset of the disability and the policy's lapse in July, 1994, and because he did not provide written notice of his disability within 30 days of its occurrence. Plaintiff then filed this action in state court. Minnesota Mutual removed the action to this Court.

■ In denying the Defendant's Motion for Summary Judgment, the Court previously held that Plaintiff could not cancel the policy at a time when he was mentally incompetent. The Court also held that he could not initiate a change in the policy that ultimately lead to its lapse for failure to make premium payments. Finally, the Court held that there were issues of fact as to whether the Plaintiff was disabled as defined by the policy during the time that it should have been in effect, if not for the change from automatic debit to quarterly

invoice. In reaching this conclusion, the Court erred in failing to apply the well settled law of Georgia that mental incapacity cannot be invoked to reinstate an insurance policy that has lapsed due to non-payment of premiums.

The court must apply Georgia law in this diversity action. In *Northwestern Mut. Life Ins. Co. v. Dean*, 43 Ga.App. 67, 157 S.E. 878 (1931), aff'd. 175 Ga. 321, 165 S.E. 235 (1932), the insured under a life insurance policy became insane due to a brain disease. The policy provided for waiver of premiums upon filing of proof of disability. No proof of disability was filed. The policy lapsed for non-payment of premiums, and the insured then died. The Georgia Court of Appeals held that the insanity of the insured did not excuse the failure to file the proof of disability. In doing so, the court observed:

> It is the settled law that insanity of the insured does not excuse failure to pay the premiums, which failure, in numerous instances, works a forfeiture of the policy of insurance; and, a fortiori, in our opinion, the law does not excuse the failure to furnish a required proof which, in this case, merely affects the right to exemption from premium payments.

*Id.* at 881. The court continued:

> Courts cannot permit their judgments to be influenced by sentiment in such cases, though they disappoint some cherished hopes and expectations; and the sacred right of contract must not be unnecessarily invaded or impaired by judicial interpretation. To vary the contract of the parties by recourse to fantastic refinements and distinctions is as much an offense against justice as an unjust judgment deliberately pronounced. We are persuaded, not only that our views of the instant case are in accord with the principles of justice and right, but that a contrary decision, if adopted as a precedent in other like cases, would open avenues for the perpetration of frauds upon the insurance companies.

*Id.* The same principle has been recognized in numerous other Georgia cases. *See Hipp v. Fidelity Mutual Life Insurance Co.*, 128 Ga. 491, 57 S.E. 892 (1907); *Lloyd v. Aetna Life Insurance Co.*, 50 Ga.App. 478, 178 S.E. 479 (1935); *McLendon v. Jefferson Standard Life Ins. Co.*, 59 Ga.App. 399, 1 S.E.2d 75 (1939); *McClain v. Provident Life and Accident Ins. Co. .*, 65 Ga.App. 355, 16 S.E.2d 173 (1941).

■ In this case, the policy lapsed due to non-payment of premiums. Prior to the lapse, the Plaintiff was not disabled, as defined in the policy, because he was not under the care of a physician. For the sake of discussion, it is assumed that Plaintiff's mental incapacity set in motion the events leading up to the lapse of the policy. This is exactly the same situation the court confronted in *Dean*. The change in the payment procedure from automatic debit to quarterly invoice did not prevent Plaintiff from paying the premium due. Plaintiff's failure to respond to the premium notice and the reinstatement offer are what lead to the policy lapse. According to well settled Georgia law, the lapse of the policy due to non-payment of premiums is not excused by Plaintiff's mental incapacity. Therefore, Minnesota Mutual is entitled to summary judgment.

■ Plaintiff contends that Minnesota Mutual breached its contract by changing the payment method without written authorization from Plaintiff. The policy provided that it could not be changed without a writing signed by an officer of Minnesota Mutual. The authorization for automatic premium withdrawal also stated that it would remain in effect until the insured terminated it in writing. These contractual terms for the benefit of the insurer could be waived by it. *See Tyler v. State Farm Mutual Automobile Ins. Co.*, 244 F.2d 84 (5th Cir.1957). Furthermore, Plaintiff has offered no authority to support his argument that he was excused from responding to the premium notice and the reinstatement offer because his

agent changed the payment method without written authorization from Plaintiff. Accordingly, the Defendant's Motion for Summary Judgment [Doc. 18] is GRANTED

SO ORDERED